UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BMO HARRIS BANK N.A.
    *Plaintiff*,

v.

P B & J LOGISTICS INC., *et al.*,
    *Defendants*.

No. 3:18-cv-221 (MPS)

**RULING ON MOTION FOR DEFAULT JUDGMENT**

This case arises out of three loan and security agreements between Plaintiff BMO Harris Bank N.A. ("BHB") and P B & J Logistics Inc. ("PB&J") for the purchase of certain equipment for use in PB&J's business and on which BHB alleges PB&J has defaulted. PB&J failed to appear to defend the case, and BHB successfully moved for entry of default against PB&J, which the Clerk granted on July 9, 2018. (ECF No. 13). BHB has now filed a motion for default judgment under Fed. R. Civ. P. 55(b)(2) on its only claim against PB&J, for breach of three loan and security agreements. (ECF No. 15). For the reasons described below, BHB's motion for default judgment is DENIED WITHOUT PREJUDICE.

**I.    Factual Background**

The following facts are taken from BHB's complaint and documents incorporated by reference therein. (*See* ECF No. 1 (hereinafter "Compl.")).

BHB is a corporation organized under Illinois law and has a principal place of business in Chicago, Illinois. (Compl. ¶ 1.)[1] PB&J is a corporation organized under Connecticut law with its

---

[1] Due to the initials "N.A." in its name, I assume that BHB is a national bank. I take its allegation that it "has a principal place of business in Chicago," (Compl. ¶ 1), to indicate that its main office, as set forth in its articles of association, is in Chicago, Illinois. Accordingly, the complaint adequately pleads diversity jurisdiction. *See* Fed. R. Civ. P. 8(a)(1); *Wachovia Bank v. Schmidt*,

1

principal place of business in Waterbury, Connecticut. (*Id.* ¶ 2). According to the Office of Secretary of the State Denise W. Merrill, Nichole El-Massri ("Ms. El-Massri") is PB&J's President, Secretary, Director, and Agent.[2] Ameen El-Massri ("Mr. El-Massri") is listed as the Vice-President of PB&J on each of the three loan and security agreements. (ECF No. 1-2 at 6; ECF No. 1-3 at 6; ECF No. 1-4 at 6). Both Mr. El-Massri and Ms. El-Massri reside in Waterbury, Connecticut, and are Connecticut citizens. (Compl. ¶¶ 3–4).

In September 2016, PB&J and BHB entered into three loan and security agreements, by which PB&J financed its purchase of certain equipment for use in its business and gave BHB a security interest in that equipment. On or about September 7, 2016, PB&J and BHB entered into the first agreement in the total amount of $22,009.20 for the purchase of "steel flatbeds" (hereinafter "Agreement 1"). (*Id.* ¶ 7). Agreement 1 required PB&J to make monthly payments of $336.82 beginning on October 10, 2016 for a term of 60 months. (*Id.* ¶¶ 8, 10). On or about September 13, 2016, PB&J and BHB entered into the second agreement in the total amount of $47,103.00 for the purchase of additional "steel flatbeds" (hereinafter "Agreement 2"). (*Id.* ¶ 13). Agreement 2 required PB&J to make monthly payments of $785.05 beginning on October 20, 2016 for a term of 60 months. (*Id.* ¶¶ 14, 16). Also on or about September 13, 2016, PB&J and BHB entered into the third agreement in the total amount of $178,204.00 for the purchase of certain "Cascadia" equipment (hereinafter "Agreement 3"). (*Id.* ¶ 20). Agreement 3 required PB&J to make monthly payments of $3,564.08 beginning on November 1, 2016 for a term of 50 months. (*Id.* ¶¶ 21, 23).

---

546 U.S. 303, 307 (2006) ("[W]e hold that a national bank . . . is a citizen of the State in which its main office, as set forth in its articles of association, is located.").

[2]Accessed at https://www.concord-sots.ct.gov/CONCORD/online?sn=PublicInquiry&eid=9740 (last accessed on March 25, 2019 at 6:24 pm).

All three loan and security agreements contain identical provisions defining events of default and BHB's remedies for any such events. Under paragraph 5.1 of the Agreements, entitled "Events of Default," "[a]n event of default shall occur if . . . [PB&J] fails to pay when due any amount owed by it to [BHB]." (ECF No. 1-2 at 4; ECF No. 1-3 at 4; ECF No. 1-4 at 4). Under paragraph 5.2 of the Agreements, entitled "Remedies," when there has been "an event of default," BHB may "declare the indebtedness hereunder to be immediately due and payable." (ECF No. 1-2 at 4; ECF No. 1-3 at 4; ECF No. 1-4 at 4).

On or about April 10, 2017, PB&J defaulted under the terms of Agreement 1 by failing to make the minimum monthly payment. (Compl. ¶ 12). On or about March 1, 2017, PB&J defaulted under the terms of Agreement 3 by failing to make the minimum monthly payment. (*Id.* ¶ 26). On or about March 20, 2017, PB&J defaulted under the terms of Agreement 2 by failing to make the minimum monthly payment. (*Id.* ¶ 19).

## II.    Procedural Background

The Complaint was filed on February 6, 2018 against PB&J, Mr. El-Massri, and Ms. El-Massri. (Compl.). Electronic summons forms were issued on February 7, 2018 as to Mr. El-Massri, Ms. El-Massri, and PB&J. (ECF No. 6). An affidavit of service filed on May 18, 2018 stated that Ms. El-Massri was personally served on May 8, 2018. (ECF No 7). An affidavit of service filed on June 18, 2018 stated that Mr. El-Massri was served as the required documents were delivered to his wife, Ms. El-Massri, on May 16, 2018 at their home. (ECF No. 8). Although the docket entry accompanying this filing states that PB&J was also served on this date, neither affidavit of service states that service was effectuated on Ms. El-Massri in her capacity as an agent of PB&J, nor do they mention PB&J at all.

Where there is proof of actual notice, however, defects in service are harmless. *St. John Rennalls v. County of Westchester*, 159 F.R.D. 418, 420 (S.D.N.Y. 1994) ("Deficiencies in the method of service are harmless error under Fed.R.Civ.P. 61 when the party asserting deficient service has actual knowledge of the action and no prejudice results from the deficiency."); *Anderson v. Lalley*, 2015 WL 6686586, at *4 (W.D.N.Y. Oct. 29, 2015) (noting that "courts in this Circuit . . . have found that [w]here a party contesting service of process has received actual notice, service requirements . . . are construed liberally.") (internal quotation marks and citation omitted); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) ("Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.") (internal quotation marks omitted).

Here, PB&J had actual notice. As the President, Secretary, Director, and Agent of PB&J, Ms. El-Massri was permitted to accept service on behalf of PB&J. Fed. R. Civ. P. 4(h) (stating that a corporation must be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process"). Although neither affidavit of service indicates that Ms. El-Massri was served in her capacity as an agent of PB&J, she was personally served with the complaint making claims against PB&J. (ECF No. 7). She also accepted service, of the same complaint making claims against PB&J, for Mr. El-Massri. (ECF No. 8). Finally, she filed an answer in this case, thereby providing further proof that she received actual notice of the suit against her, her husband, and PB&J. *C.f. Sidney v. Wilson*, 228 F.R.D. 517, 524 (S.D.N.Y. 2005) (finding that, on a 12(b)(5) motion to dismiss, the defendant's act of retaining counsel demonstrated actual notice of the lawsuit). Thus, the defect in service to PB&J is harmless as Ms. El-Massri, an agent of PB&J who

was authorized to accept service on its behalf, received actual notice of the suit against PB&J.[3] Nevertheless, BHB shall serve this order, together with the summons and complaint, on PB&J in accordance with the Court's directions below.

## III.    Legal Standard

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). First, a party must obtain a default under Rule 55(a). *Id*. "When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention, and Rule 55(a) empowers the clerk of the court to enter a default against a party that has not appeared or defended." *Id.* Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b). *Id.* If the plaintiff's claim is for a sum certain, Rule 55(b)(1) allows the clerk to enter default judgment in the plaintiff's favor. In all other cases, the plaintiff must apply to the court for default judgment under Rule 55(b)(2).

Once default has been entered against a defendant, "all well-pleaded allegations in the complaint pertaining to liability are deemed true." *Scottsdale Ins. Co. v. LCB Const. LLC*, 2012 WL 1038829, at *3 (E.D.N.Y. Feb. 14, 2012), report and recommendation adopted, 2012 WL 1041455 (E.D.N.Y. Mar. 28, 2012). Although a default constitutes an admission of the allegations in the complaint, "it does not admit any conclusions of law alleged therein, nor establish the legal sufficiency of any cause of action." *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000). At the second step, it therefore "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action." *Leider v. Ralfe*, 2004 WL 1773330,

---

[3] On June 25, 2018, BHB filed a notice of dismissal as to Ms. El-Massri. ECF No. 10. On June 26, 2018, the Court terminated Ms. El-Massri as a party.

at *7 (S.D.N.Y. July 30, 2004) (internal quotation marks and citation omitted); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."). The court must "draw all reasonable inferences in [the non-defaulting party's] favor." *Finkel v. Romanowicz*, 557 F.3d 79, 84 (2d Cir. 2009).

Once a court determines that a plaintiff is entitled to default judgment as a matter of law, it must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnaise Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Id.* "A district court has the discretion to determine the amount of damages to be included in a default judgment by an evidentiary hearing, detailed affidavits, or documentary evidence." *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 191 (2d Cir. 2006). It is not necessary to hold a hearing on damages as long a court "ensure[s] that there [is] a basis for the damages specified." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

**IV.   Discussion**

BHB seeks damages "in the amount of $135,048.23 as well as reasonable attorney fees and costs and such other relief as the court may deem equitable and just." (Compl. ¶ 31). Because each agreement at issue contains a choice-of-law provision, (ECF No. 15-2 at 8, 13, 18), I first determine which law applies. I then address liability and damages.

### A. Choice of Law

"A federal trial court sitting in diversity jurisdiction must apply the law of the forum state, which in this instance is Connecticut, to determine the choice-of-law rules." *Bulldog New York LLC v. Pepsico, Inc.*, 8 F. Supp. 3d 152, 160 (D. Conn. 2014). As a general matter, "[c]ontract[] clauses which require the application of the laws of other states upon breach or dispute are recognized as proper in Connecticut." *Zenon v. R.E. Yeagher Mgt. Corp.*, 57 Conn.App. 316, 321 (Conn. App. 2000) (internal quotation marks and citation omitted). Thus, "parties to a contract generally are allowed to select the law that will govern their contract, unless either: '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue.'" *Elgar v. Elgar*, 679 A.2d 937, 943 (Conn. 1996) (quoting Restatement (Second), Conflicts of Law § 187); *see also Laterra v. GE Betz, Inc.*, 2017 WL 3485505, at *5 (D. Conn. Aug. 14, 2017) (articulating the same rule).

Here, the parties have chosen to apply Texas law to their agreements. Each of the three contracts at issue include the following provision regarding governing law:

> **7.6 Governing Law** . . . Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Texas and *all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Texas* (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment.

((ECF No. 1-2 at 5; ECF No. 1-3 at 5; ECF No. 1-4 at 5) (emphasis added)). In addition, Texas has a substantial relationship to the parties' transactions as each agreement was signed by a BHB representative located in Texas. (ECF No. 1-2 at 6; ECF No. 1-3 at 6; ECF No. 1-4 at 6); *see Odyssey Reinsurance Co. v. Cal-Regent Ins. Services Corp.*, 123 F. Supp. 3d 343, 350 (D. Conn.

7

2015) (applying Texas law in accordance with a choice-of-law provision in a case between a Connecticut corporation and a California corporation because the agreements "were each made and entered into in the state of Texas"). Further, the state of Connecticut does not have a materially greater interest than the state of Texas in the determination of this particular issue.[4]

### B. Liability

"The elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. – San Antonio 2015) (internal quotation marks omitted). A valid contract is established by "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Davis v. Texas Farm Bureau Ins.*, 470 S.W.3d 97, 104 (Tex. App. – Hous. [1st Dist.] 2015). And if the contract is unambiguous, the Court "will enforce the parties' intentions as expressed in the contract." *rePipe, Inc. v. Turpin*, 275 S.W.3d 39, 44 (Tex. App. – Hous. [14th Dist.] 2008). Here, the facts alleged in BHB's complaint, taken as true, establish all four elements of a breach of contract claim.

First, there were three valid and binding contracts between BHB and PB&J. Agreement 1 states that the "Debtor [PB&J] promises to pay Lender [BHB] principal plus pre-computed interest

---

[4] In any case, the elements of a breach of contract claim are substantially the same under Texas law and Connecticut law. *Compare Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.--San Antonio 2015) ("The elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach.") (internal quotation marks omitted), *with Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly*, P.C., 311 Conn. 282, 291 (Conn. 2014) ("The elements of a breach of contract claim are the [1] formation of an agreement, [2] performance by one party, [3] breach of the agreement by the other party, and [4] damages.").

and any administrative fee" in the amount of "$22,009.20 in 60 installments" for steel flatbeds. (ECF No. 1-2 at 2). Agreement 2 includes the same language and provides that PB&J promises to pay $47,103.00 in 60 installments for another set of steel flatbeds. (ECF No. 1-3 at 2). Agreement 3 also includes the same language and provides that PB&J promises to pay $178,204.00 in 50 installments for "Cascadia" equipment. (ECF No. 1-4 at 2). Ameen El-Massri signed all three agreements as the "Vice President" of PB&J. (ECF No. 1-2 at 6; ECF No. 1-3 at 6; ECF No. 1-4 at 6). Different "authorized signers" signed the agreements on behalf of BHB. (ECF No. 1-2 at 6; ECF No. 1-3 at 6; ECF No. 1-4 at 6). Because all three contracts include terms that are clear and unambiguous, and the parties agreed to those terms as evidenced by their signatures, there was a mutual understanding of the terms. The agreements are therefore valid and binding.

Second, BHB completed performance under the terms of the agreements. Agreement 1 notes that BHB was directed to disburse funds, apparently reflecting the purchase price, to the seller of the equipment, and that the equipment was delivered to PB&J on September 7, 2016. (ECF No. 1-2 at 2, 6). Agreements 2 and 3 include the same language and note that the equipment purchased under these agreements was delivered on September 13, 2016. (ECF No. 1-3 at 2, 6; ECF No. 1-4 at 2, 6). BHB therefore performed under the agreements.

Third, PB&J breached the agreement by failing to make minimum payments in accordance with the terms of the contract. On April 10, 2017, PB&J failed to make the minimum monthly payment under Agreement 1. (Compl. ¶ 12). On March 1, 2017, PB&J failed to make the minimum monthly payment under Agreement 3. (*Id*. ¶ 26). On March 20, 2017, PB&J failed to make the minimum monthly payment under Agreement 2. (*Id*. ¶ 19). Because each of the agreements provide that PB&J shall make payments in monthly installments, (ECF No. 1-2 at 2; ECF No. 1-3 at 2; ECF No. 1-4 at 2), and that PB&J shall be in default if it fails to pay any amount when it is

due, (ECF No. 1-2 at 4; ECF No. 1-3 at 4; ECF No. 1-4 at 4), the failure to make monthly payments under the three agreements constitutes a breach of the agreements.

Finally, BHB alleges damages due to PB&J's breach and default of the agreements. (Compl. ¶ 31). As noted above, however, "allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnaise Sec. (USA), Inc.*, 183 F.3d at 155. And "the Court may conduct its own assessment to determine the proper amount of damages." *Smith v. Wilson*, 2016 WL 11295453, at *2 (D. Conn. Sept. 12, 2016).

### C.     Damages

In a motion for default judgment, the plaintiff has the burden of "alleg[ing] details or evidence that would allow the Court to determine damages with reasonable certainty." *Smith v. Wilson*, 2016 WL 11295453, at *2 (D. Conn. Sept. 12, 2016). The Court may not "just accept [the plaintiff's] statement of the damages" as this would not "satisfy the court's obligation to ensure that the damages were appropriate." *Transatlantic Marine Claims Agency, Inc. v. Ace Ship. Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). Rather, "damages must be based on admissible evidence." *H. v. Kent Worldwide Mach. Works, Inc.*, 359 Fed. Appx. 206, 207 (2d Cir. 2010); *Trustees of Metal Polishers Loc. 8A-28A Funds v. Prestige Restoration and Maint., LLC*, 986 F. Supp. 2d 159, 164 (E.D.N.Y. 2013) (affirming recommendation of Magistrate Judge to deny motion for default judgment where Plaintiff "failed to provide the requisite, admissible documentation upon which the court could calculate an award of damages").

Here, BHB has failed to meet its burden, as it has failed to provide sufficient evidence to allow the Court to determine damages with reasonable certainty. In an affidavit supporting its motion for default judgment, a Recovery Analyst at BHB states that PB&J has failed to pay "$135,048.23 in overdue payments and late charges associated with Agreement 1, Agreement 2

and Agreement 3." (ECF No. 15-2 at 3). BHB also attaches copies of the "Loan Damage Calculator Summaries" to support its calculation of damages. However, the summaries and the affidavits do not contain sufficient information or documentation from which the Court could determine damages with reasonable certainty.

First, each loan damage summary lists an interest rate of 18%. (ECF No. 15-2 at 20, 21, 23). BHB appears to be relying on the "Acceleration Interest" provision in the agreements to apply this rate, (*see, e.g.*, ECF No. 1-2 at 4), but the Court requires additional information to confirm this is the case in light of the other contract provisions regarding interest, (*id.* at 2, 3). Second, the loan damage summaries for Agreements 2 and 3 list a "Repossession Fee" of $2,850.00 and $6,700, respectively. (ECF No. 15-2 at 21, 23). However, the Court is unable to determine the basis for these costs; there is no explanation of these fees in the sworn affidavits, nor are there invoices or other documentation establishing the cost of repossession. Third, the loan damage summaries for all three agreements list late charges. (*Id*. at 20, 21, 23). However, BHB states only that PB&J failed to pay late charges, without explaining how these charges were calculated, and why they should be allowed, given that the interest rate BHB is applying – 18% – is the maximum allowed by Texas law. (ECF No. 15-2 at ¶ 13); *Grotjohn Precise Connexiones Intern., S.A. v. JEM Fin., Inc.*, 12 S.W.3d 859, 876 (Tex. App.--Texarkana 2000) (explaining that a "contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest" and that "[i]nterest may not be charged in an amount greater than 18% per annum"); *Carter v. Ennis Paint, Inc.*, 2014 WL 6091948, at *2 (Tex. App.--Waco Nov. 13, 2014) (noting that the "parties agree[d] that the maximum lawful rate of interest is 18%" in a case considering whether the interest rate charged on a promissory note was usurious); *Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37, 46 (Tex. App.--Fort Worth 2001) ("Charging the 7

percent late charge in addition to the 13.5 percent interest rate imposed by acceleration results in a 20.5 percent interest rate, which is greater than the maximum 18 percent interest rate allowed by law."). Fourth, the loan damage summary for Agreement 3 references a "partial payment" of $1,690.09 and an "[a]mount of [i]nterest attributed to partial payment" of $3,690. (ECF No. 15-2 at 23). But neither the affidavits nor the complaint contains an explanation of how these amounts were calculated, and the loan damage summary itself does not clearly indicate how these figures were taken into account.

Thus, BHB has failed to provide the requisite, admissible documentation, and the Court is unable to determine damages with reasonable certainty.

## V. Conclusion

To summarize, I find that BHB has established PB&J's liability for breach of contract, but has not provided sufficient information or evidence to allow a damages calculation with reasonable certainty. As such, the motion for default judgment is DENIED WITHOUT PREJUDICE. Within twenty-one days of this ruling, BHB may file a renewed motion, together with affidavits or other documentation to provide a clearer explanation and factual basis for awarding the damages it seeks.

In addition, because of the service issues identified above, BHB shall serve this order, together with the summons and complaint, on PB&J in accordance with Rule 4. BHB shall file proof of such service on the docket within 21 days.

IT IS SO ORDERED.

/s/ MICHAEL P. SHEA
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            March 29, 2019